UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FELIX GAGO,<br><br>Defendant. | No. 1:16-cr-00123-DAD-BAM-3<br><br>ORDER DENYING DEFENDANT FELIX GAGO'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 116) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Felix Gago. (Doc. No. 116.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On July 28, 2016, an indictment was returned charging defendant Gago and his three co-defendants with one count of conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. No. 30.) With respect to defendant Gago, the indictment alleged that the amount of controlled substance involved in the offense was 500 grams and more of a mixture containing a detectable amount of methamphetamine and 50 grams and more of actual methamphetamine. (*Id.* at 2.) On August 23,

2017, defendant Gago entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. (Doc. Nos. 52, 54.) On November 27, 2017, the court sentenced defendant Gago to 116 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 60-month term of supervised release. (Doc. Nos. 67, 68.) The court also imposed the mandatory $100 special assessment. (*Id.*)

Defendant Gago is currently serving his sentence at Federal Correctional Institution, Butner Medium I ("FCI Butner Medium I") in Butner, North Carolina. (Doc. Nos. 116 at 7; 121 at 4.) As of the date of this order, defendant has served approximately 55 months, or 47% of his full 116-month custodial sentence. (Doc. Nos. 121 at 4; 121-1 at 4.) Accounting for good time credit, his projected release date is April 9, 2025 according to BOP's inmate data records. (Doc. Nos. 121 at 4; 121-1 at 2.) In his pending motion, defendant asserts that "[h]is present release date is March 13, 2025, and he has served over 50% of his statutory term" (Doc. No. 116 at 6), and though defendant does not state the basis for this assertion, the court notes that the BOP records for defendant show that, as of May 17, 2021, he has served approximately 53.5% of his statutory term of imprisonment. (Doc. No. 121-1 at 4.)

On April 22, 2021, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 116.) On June 4, 2021, the government filed its opposition to the motion. (Doc. Nos. 120, 121.) Defendant filed a reply thereto on June 11, 2021. (Doc. No. 126.)

Several months before defendant Gago filed the pending motion, he received both doses of the Pfizer-BioNTech COVID-19 vaccine and is now fully vaccinated; he received the first dose on December 19, 2020 and the second dose of the vaccine on January 5, 2021. (Doc. No. 125 at 12—sealed.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited

circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.*

---

intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

/////

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.  Administrative Exhaustion**

The parties agree that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 116 at 12; 121 at 5.) Specifically, defendant Gago submitted a written request for compassionate release to the warden of FCI Butner Medium I on

/////

6

August 19, 2020, and that request remains pending. (*Id.*) Accordingly, the court will turn to the merits of defendant's motion.

**B.      Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

7

> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

In his pending motion, defendant argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist because he suffers lingering effects from contracting COVID-19, he has several health conditions that place him at a higher risk of re-infection from COVID-19, and BOP has generally failed to adequately protect inmates from the virus. (Doc. No. 116 at 5.) In particular, defendant asserts that he suffers from "post-COVID symptoms of persistent headaches and shortness of breath" after having a "rather severe case" of COVID-19, and he suffers from obesity (with a body mass index "BMI" of 32.4), hypertension,

---

[4] Here, however, because defendant Gago is only 45 years old (Doc. Nos. 125 at 1—sealed), his age and age-related factors do not play a role in consideration of his pending motion.

8

hyperlipidemia, sleep apnea, insomnia, excessive daytime sleepiness, and chronic anxiety. (*Id.* at 5, 13–14.) Defendant acknowledges that he has now received the Pfizer-BioNTech COVID-19 vaccine but argues that the vaccine is not 100% effective. (*Id.* at 14.) He also argues that he is particularly vulnerable because he is incarcerated at FCI Butner Medium I, which has demonstrated a "persistent and well-documented failure to consider eligible inmates for home confinement, [] lack of personal protective equipment, inadequate health care, and [] inability to socially distance inmates." (*Id.* at 5.) In this regard, defendant's motion focuses in large part on the BOP's overall response to the pandemic, including the conditions at the Butner correctional complex from over a year ago and data on the rates of infections and deaths among inmates and staff at BOP facilities generally. (*Id.* at 5–9.)

In its opposition to the pending motion, the government acknowledges that defendant "Gago's slight obesity, which is identified by the CDC as a risk factor for COVID-19," may increase his risk of suffering a severe illness, but argues that fact alone is insufficient to establish the existence of extraordinary and compelling reasons warranting defendant's release. (Doc. No. 121 at 7.) The government argues that the mere existence of COVID-19 in society or in the correctional institution where defendant Gago is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (*Id.*) The government emphasizes that of particular importance is the fact that defendant Gago has already been fully vaccinated against COVID-19, thereby undermining his argument that extraordinary and compelling reasons exist based on the risk of severe illness posed to him if he were to contract COVID-19. (*Id.* at 8–9) (citing cases). In addition, the government disputes defendant's assertion that he had previously contracted COVID-19 because there is no evidence in defendant's BOP medical records to suggest that defendant had tested positive for COVID-19 at any point. (*Id.* at 8.) Finally, the government notes that there are currently no reported active cases of COVID-19 infections at FCI Butner Medium I where defendant is imprisoned. (*Id.* at 5.)

In his reply, defendant does not provide any information or substantiating evidence as to his purported "severe" case with COVID-19. Defendant merely reiterates that BOP failed to control the outbreak of the virus at the Butner correctional complex and, according to defendant,

9

those past institutional failures serve to support his motion for compassionate release at this time. (Doc. No. 126 at 1–2.)

The court concludes that defendant has failed to show the existence of extraordinary and compelling reasons calling for his release from confinement in light of the critical fact that he is now fully vaccinated, combined with the fact that he has not substantiated his assertion that he suffered a "severe" case of COVID-19 and the fact that FCI Butner Medium I is currently reporting zero active COVID-19 cases.[5] Obesity and hypertension are recognized by the U.S. Centers for Disease Control and Prevention ("CDC") as health conditions that may place individuals at a high risk of suffering severe illness from COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). But notably, defendant does not argue that FCI Butner Medium I is failing to adequately treat his medical conditions or that he is unable to provide self-care for his conditions.

As to defendant's vaccination against COVID-19, he received his second dose of the Pfizer-BioNTech vaccine on January 5, 2021. (Doc. No. 125 at 12—sealed.) Thus, defendant was fully vaccinated months before he filed the pending motion. *See COVID-19: When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated May 16, 2021). In his motion, defendant essentially argues only that the vaccines do not provide complete immunity from COVID-19. (Doc. No. 116 at 14.) The court finds defendant's argument in this regard to be unpersuasive. While it appears to be correct, as defendant contends, that vaccinated individuals may nonetheless contract COVID-19, defendant does not claim that a vaccinated individual may also suffer from a *severe* illness as a result—only that a vaccinated individual may still contract the virus. Based upon news reports, it would also appear that it is exceedingly rare for a vaccinated individual to both contract the virus and to suffer a severe

---

[5] As of the date of this order, the BOP is reporting that there are zero inmates and zero staff members at FCI Butner Medium I who have tested positive with active cases of COVID-19. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 21, 2021).

illness as a result. *See* Lila Seidman, *Napa County Records First Death of Fully Vaccinated Person from COVID-19*, June 7, 2021, https://www.latimes.com/california/story/2021-06-07/napa-county-records-first-fully-vacinated-person-covid-death (last visited June 15, 2021). Here, defendant is seeking his release from prison based on the argument that he will suffer a severe illness if he were to contract COVID-19 again. According to the CDC, authorized vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated May 28, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals, like defendant Gago, are very well protected against becoming severely ill from COVID-19. *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, ___ F. Supp. 3d ___, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination

significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

In light of all of the above, the court concludes that although defendant Gago suffers from obesity and hypertension, medical conditions that may place him at higher risk of becoming seriously ill if he were to be infected by COVID-19, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A), in large part because that risk has been significantly mitigated by his receiving the COVID-19 vaccination. Therefore, his motion for compassionate release will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Gago's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

Defendant contends that a reduction of his sentence is consistent with consideration of the § 3553 sentencing factors because he has completed all his financial responsibility payments while incarcerated, he has made significant strides in rehabilitation, he has tremendous support from his family, and he is needed to care for his disabled parents. (Doc. No. 116 at 15–16.)

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

Defendant also emphasizes that his involvement in criminal activity was non-violent and "he has demonstrated through his thoughtful words and deeds that he has been rehabilitated and poses a threat to no one." (Doc. No. 126 at 2.) Defendant has attached several letters from his family members who wrote in support of his pending motion for compassionate release. (Doc. Nos. 116 at 33–44; 126 at 5–9.)

The government counters that "a careful weighing of [defendant] Gago's crimes in this case, his criminal history, his characteristics, the need for just punishment, and to protect the public from future crimes, all are inconsistent with a sentence reduction after applying the § 3553(a) factors." (Doc. No. 121 at 11.) Specifically, the government contends that a reduction in defendant's sentence at this time would be inconsistent with consideration of the § 3553(a) sentencing factors because he has served only a relatively small portion of his original 116-month custodial sentence (approximately 55 months), and that original sentence imposed reflected the seriousness of his drug offense, particularly in light of his extensive criminal history involving five felony drug convictions and a misdemeanor conviction for domestic violence, and his membership in the Bulldog criminal street gang and the Malos Hechos Motorcycle Club criminal street gang. (*Id.* at 2, 10.)

As noted above, defendant is currently serving a 116-month sentence of imprisonment for conspiracy to distribute and to possess with intent to distribute 500 grams and more of a mixture containing a detectable amount of methamphetamine and 50 grams and more of actual methamphetamine. (Doc. Nos. 67, 68.) With his early acceptance of responsibility, the U.S. Probation Office determined that defendant is deemed to be a career offender, and that his total offense level in this case was 34 and his criminal history was VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 262 and 327 months. (Doc. No. 57 at 8, 13, 21.) Noting defendant's long history of drug abuse, gang affiliations, and felony convictions, the probation officer recommended a low-end of the guideline range sentence of 262 months in BOP custody. (*Id.* at 21–22.)[7] The undersigned relied upon its careful

---

[7] As the presentence report noted, the offense to which the defendant entered his guilty plea carried with it a ten-year mandatory minimum term of imprisonment. (Doc. No. 57 at 21.)

13

consideration of the § 3553(a) factors in varying downward significantly from the advisory sentencing guideline range and imposing a 116-month term of imprisonment. (Doc. No. 68 at 2.)

The court is not persuaded that a reduction in defendant Gago's already arguably lenient sentence would be consistent with the appropriate consideration of the § 3553(a) sentencing factors. First, defendant's lengthy criminal history related to his drug addiction and gang affiliation suggests that he may be likely to reoffend, and the court finds that consideration of the risk of recidivism on the part of the defendant weighs to some degree against the granting of compassionate release in this case. *See United States v. Magana-Lopez*, No. 11-cr-04200-RCC-JR, 2020 WL 3574604, at *2 (D. Ariz. July 1, 2020) (denying compassionate release for a non-violent offender and discounting defendant's contentions that he was at low risk of recidivism in part because he was "serving his sentence after receiving prior drug trafficking . . . convictions" thus leading the court to conclude that his contention of a low risk of recidivism "rings false.").

Second, although defendant asserts in vague and conclusory fashion that he has been rehabilitated, he does not identify or describe any of his rehabilitative efforts. Moreover, even if the court were persuaded that defendant had demonstrated his rehabilitation, rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Third, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Gago has served less than half (approximately 55 months) of the 116-month sentence imposed, and approximately half of the sentence imposed if considering application of good time credits. (*See* Doc. Nos. 116 at 6; 121 at 4; 121-1 at 4.) In the court's view, considering that defendant Gago already received a well

14

below-guideline range sentence, a reduction of his 116-month sentence effectively to one of 55 months would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.[8] *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Fourth, reducing defendant Gago's custodial sentence to one of 55 months would arguably result in unwarranted sentence disparities among his co-defendants. Neither defendant Gago nor the government address this factor, but the court notes that co-defendant Randy Seja, who had a total offense level of 27 and criminal history category of V, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 120 and 150 months, was sentenced to a 120-month term of imprisonment. (Doc. Nos. 85 at 21; 102 at 2.) Co-defendant Christopher Martinez, Sr., who had a total offense level of 29 and criminal history category of III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 108 and 135 months, was sentenced to a 97-month term of imprisonment. (Doc. Nos. 86 at 25; 93 at 2.) Co-defendant Christopher Martinez, Jr., who had a total offense level of 21 and criminal history category of III, was sentenced to the mandatory minimum sentence of a 60-month term of imprisonment. (Doc. Nos. 104 at 21; 107 at 2.) Thus, defendant was sentenced to the second

---

[8] In the pending motion, defendant also appears to ask the court to release him on home confinement. (*See* Doc. No. 116 at 16.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5 n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e. approximately 55 months) and modify the conditions of his term of supervised release to include approximately 61 additional months of home confinement. The court is unwilling to do so for the reasons set forth above.

longest term of imprisonment (116 months) among his co-defendants, and if the court were to grant defendant's motion to release him now, after he has served only 55 months, he would effectively receive the shortest term of imprisonment sentence among his co-defendants which would not be called for under the facts of this case.

On balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Gago has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 116) is denied.

IT IS SO ORDERED.

Dated: **June 21, 2021**

_____
UNITED STATES DISTRICT JUDGE